## ISAAC WALKER v. STATE, for the Use of ELIZABETH HUDSON.

High Court of Errors and Appeals.   June 13, 1818.

*Ridgely's Notebook II, 138.**

[*Rogers* for plaintiff in error.   *Vandyke* for defendant in error.]

The Court kept this case under consideration until June 17, when judgment was rendered.   THE CHANCELLOR delivered the following opinion.

THE CHANCELLOR.   In considering this case I shall begin with the third error assigned, which is, that the plaintiff (below) has not in any part of the pleading in said cause assigned and set forth any breach or breaches of the condition of the said writing obligatory.

This is a suit on a testamentary bond made according to the provisions of the Act to compel executors to give security etc., 2 Del.Laws 888.   It is enacted that the said bonds may be put in suit in the name of the Delaware State against the obligor or obligors for the use of any creditor or creditors, legatee or legatees, or person or persons who may be interested in the said testator's estate, etc.   This Act has made no further provision in relation to such bonds when put in suit for a legatee.   But the Act for establishing Orphans' Court, 1 Del.Laws 87, s. 12, includes within its description and provision testamentary as well as administration bonds.   That Act has prescribed no form of proceeding in prosecuting a suit up to the first judgment.   The words are, "And that when any of the said bonds shall be put in suit, and judgment thereupon obtained, the judgment shall remain in the same nature the bonds were, and that no execution issue out

---

* This case is also reported in *Clayton's Notebook, 68.*

thereupon, before the party grieved shall by writ of *scire facias* summon the person or persons, against whom the said judgment is obtained, to appear and shew cause why execution shall not issue upon the said judgment; and if the party grieved shall prove what damages he sustained, and thereupon a verdict be found for him, the Court of Common Pleas (where such suit is) shall award execution for so much as the jury shall there find, with costs, and no more. And the former judgment is hereby declared still to remain cautionary for the satisfaction of such others as shall legally prove themselves damnified, and recover their damages in the manner aforesaid."

This, it is to be remembered, is a suit to recover a judgment on the penalty in the bond, and not to prove the damages sustained by the person for whose use the bond was sued. The question now occurs whether it is incumbent on the prosecutor of the action to set forth any breach or breaches of the condition of the bond in the pleading. The Acts of Assembly are entirely silent in this matter. It has been urged by the plaintiff in error that it is essential that the plaintiff below should have set forth breaches in the condition of the bond; and to prove this position he cited 3 Saund. 187c note 2, 1 Saund. 103c. Note (the last part of it), 1 Salk. 138 and 1 Esp.N.P. 209. These authorities refer to the Statute, 8 and 9 Will. III, c. 11, s. 8; and the counsel contends that that Statute governs the question. It is thereby enacted that "in all actions [ . . . ] upon any bond or bonds, or on any penal sum, for non-performance of any contract or agreement [1] in any indenture, deed, or writing contained, the plaintiff or plaintiffs may assign as many breaches as he or they shall think fit, and [2] the jury, upon trial of such action or actions shall and may assess, not only such damages and costs of suit as have heretofore been usually done in such cases, but also damages for such of said breaches so to be assigned, as the plaintiff upon [the] trial of the issues shall prove to have been broken, and that the like judgment shall be entered on such verdict as heretofore hath been usually done in such like actions." So far only is it necessary to repeat the Statute. All which relates to the judgment on demurrer, by confession, or *nil dicit*, and to the suggestions of breaches on the roll, and to the judgment remaining as a further security, and to the subsequent proceeding by *scire facias,* are provided for by the Act of Assembly.

---

[1] Statute reads "covenants or agreements."

[2] At this point, *Ridgely's Notebook II, 141,* the account of this case is interrupted; it is resumed at *160.*

It has been contended by the counsel for the defendant in error, the plaintiff below, that the Statute of William applies to bonds with collateral conditions, and to actions of covenant, because, in the first instance, the plaintiff recovers for the nonperformance; but that suits on testamentary and administration bonds are not within the reason and do not come within the provisions of that Statute.

In the case of *Collins v. Collins,* 2 Burr. 820, which was an action of debt on a bond with a condition to pay the plaintiff an annuity of £10 a year during his life, and likewise to maintain him in meat, drink and lodging, at Crundall End, for and during his life, it was urged that that was not an action brought upon a penalty for nonperformance of an agreement or covenant contained in any indenture, deed or writing; but it was answered and adjudged by the Court that the annuity bond was "an agreement between the parties, and an agreement in writing. The condition of a bond is an agreement in writing, and people have frequently gone into courts of equity upon conditions of bonds as agreements in writing, to have a specific performance of them." And this has been verified among ourselves by suits in chancery for the specific performance of what we call alienation bonds.

The case in Burrow is still stronger in another respect, and more fully answers the objection made here that by the Statute of William the plaintiff recovered in the first instance for nonperformance, but that here in this suit he can recover judgment for the penalty only, and then must sue out his *scire facias* to recover his damages. In that case, *Collins v. Collins,* the defendant pleaded a set-off, to wit, "that only £60 was due to the plaintiff on account of the said annuity, and that the plaintiff owed him more than £60, *viz* £500." And it was objected that if the plaintiff should take his judgment upon that Act of Parliament, 8 Geo. II, c. 24, s. 5 (allowing mutual debts to be set off against each other) that it would not be a judgment for the penalty, but a judgment only for the sum due and no more; and that after the matter had once passed in *rem judicatam,* the plaintiff could not afterwards recover any more upon that annuity bond, whatever might become due by future nonpayments, for that there was no provision that the judgment should stand as a security for future payment, as in the Act of 8 and 9 Will. III, c. 11. But it was answered by the Court that "the judgment is indeed by this Act, 8 Geo. II, directed to be entered for no more than shall appear to be justly due to the plaintiff. But it is clearly within the words and meaning of this Act that the penalty is to remain as a security against future breaches, in this case of a set-off pleaded, as

much as it would have done upon the Act of 8 and 9 Will. III, c. 11, if payment had been made agreeably to the directions therein contained." The case of a testamentary bond is stronger than this in Burrow, for by our Act, the first judgment can be rendered for the penalty only, which remains cautionary for all others who shall prove themselves damnified.

Take the Statute and the Act of Assembly together, and it is evident that the course prescribed in the Statute to be followed upon a judgment in demurrer, or by confession, or *nil dicit,* is substantially the same as in our Act on a judgment for the penalty in the bond. Such judgments, under the Statute, are for the penalty in the bonds, and so is the first judgment under our Act, and what reason can there be that the pleadings should be different? The Act of Assembly does not restrain or alter the Statute, except in those particular provisions which declare that the first judgment shall be for the penalty only, and which extend such judgments to others who may be concerned or interested in such bonds. Then it seems necessarily to follow, as that Statute has been practised under in this state and is the law of the land, that in all cases to which it applies, it must be followed. In the case of *Hanely v. Bun,* 5 Term 538, 636, it was adjudged that the Statute of William was compulsory, and that in all cases within the provision of it the plaintiff must assign breaches on the record. The Statute could not, without some legislative provision, meet the cases of the public bonds mentioned in the Act of Assembly, for on a judgment recovered on a bond mentioned in the Statute no person could take any advantage of it but he who recovered it; whereas the public bonds spoken of in our Act of Assembly are declared to be for the use of, and in trust for, the persons interested or concerned in the same, and a judgment recovered by one person may be proceeded on by any other who may be grieved. It therefore became unavoidably necessary to adopt a course of proceeding upon public bonds according to the exigency of the case, varying though from the Statute in such parts only as the Act of Assembly extended the judgment first recovered to all persons concerned, notwithstanding such persons were not parties to the original suit. This, though, produced no difference as to the assignment of breaches on the bond. Notwithstanding the assignment of breaches under the Statute, in the original pleadings and before judgment is rendered in any way, yet other breaches may be afterwards assigned. So, under the Act of Assembly, why should not all the breaches upon which the bond becomes forfeited be assigned? The pleading to recover the first judgment on the bond is totally distinct from the suggestions to be made in the *scire facias,* and there can be no

good reason why all the breaches shall not be assigned to show that the penalty has become forfeited.

But, suppose the Statute of William to be out of the question, how is it that on a plea of performance, the plaintiff is not obliged to assign some breach? In the declaration no breach is assigned; and it does not appear how the penalty became forfeited. On the plea of performance no breach is assigned. There is a general replication, that is, that the defendant did not perform the things he alleges he did perform. In the case of *Meredith v. Alleyn,* 1 Salk. 138, Holt, C. J., says that "In all cases (that of a bond to perform an award [3] excepted) if the defendant pleads a special matter that admits and excuses a nonperformance, the plaintiff need only answer and falsify the special matter alleged, for he that excuses a nonperformance, supposes it, and the plaintiff need not shew that which the defendant has supposed and admitted. But if the defendant pleads a performance of the condition, though it be not well pleaded, the plaintiff in his replication must shew a breach; for he has not a cause of action unless he shew one." Sergeant Williams, in the note to the case of *Hayman v. Gerrard,* in 1 Saund. 103c, says that "the true distinction between those cases where it is necessary to assign a breach in the replication, and where not, seems to be taken by Holt, C. J., in the case of *Meredith v. Alleyn.* In 2 Burr. 944, the case of *Tyson v. Carter,* M. 8 G. B. R.[4] was cited, where Lord Hardwicke laid down the rule of pleading to action of debt upon a bond with special condition to be that, 'wherever the defendant pleads a performance of the condition, the plaintiff must assign an absolute breach, though this be not necessary when he pleads a collateral matter, as a release.'" And the Court agreed to this distinction.

Now on the plea of performance in this case and the general replication, how does it appear that the bond has been forfeited, or that Elizabeth Hudson is concerned? In suits on administration or testamentary bonds, or a plea of performance, the plaintiff must assign breaches according to the Statute of William, and must show his right or title to sue the bond in the declaration or replication, so as to put his title on record and give notice to the defendant of the demand against him. Judgment must be

---

[3] Footnote by Ridgely, "The reason of the case of an award is particular. It is because an award may be good in one part and void in another, and therefore it is incumbent upon the plaintiffs to show a breach thereof, that the court may judge whether he has well conceived his action or not; for perhaps he has brought his action for a breach of that part of the award which is void, and consequently has no cause of action. See the case."

[4] That is, Michaelmas Term, eighth year of George II, King's Bench (Banca Regis). There is an imperfect note of the case in 2 Str. 94.

for the penalty in the bond, and then any person aggrieved may sue out a *scire facias,* as specially directed by the Act of Assembly. The title to sue must appear in some part of the pleading, and we think it should appear in the declaration, otherwise the defendant may be driven to great expense by a stranger.

We will not undertake to reverse the judgment rendered below, because the court there refused to allow the defendant to read in evidence the record of the granting letters of administration *de bonis non, cum testamento annexo* of the said testator, Thomas Appleton, to Thomas Appleton after the death of the executrix of the said testator; for there is some difference of opinion in this Court on that point, and we are not prepared to decide this question. Nevertheless I shall say something of my own sentiments on that subject.

The defendant below, the plaintiff in error, offered to prove that since the death of the executrix of Thomas Appleton, the testator, letters of administration of the goods etc. unadministered by the executrix had been granted, with the will annexed, to another Thomas Appleton; and then the object was to prove that assets were in the hands of this administrator *de bonis non* or that he was the proper person to answer this demand of Elizabeth Hudson, said to be a residuary legatee of the testator, Thomas Appleton. It was alleged that there was a balance of the residuary part of the personal estate of the testator remaining in the hands of the deceased executrix. Walker was her surety in the testamentary bond. The question on this part of the case is whether the administrator of the deceased executrix of Thomas Appleton is responsible to the residuary legatee, or to the administrator *de bonis non, cum testamento annexo* of Thomas Appleton; and consequently whether the administrator *de bonis non, cum testamento annexo,* can and ought to recover from the administrator or surety of the executrix this undisposed balance; for if he ought, then he should answer to this residuary legatee and not the administrator of the executrix or her surety.

It is to be recollected that this alleged balance, which was found on settling the accounts of the executrix to be in her hands, is not and cannot be goods etc. unadministered by her. The executrix collected the goods and chattels and converted them into money, and she collected the debts of the testator. She then became chargeable to creditors and legatees, so far as such goods, etc. thus converted into money were assets to be paid to one or the other. As soon as the goods were converted into money and the debts collected, they were administered. The executrix became a debtor to the legatee, supposing the debts of

the testator to be all paid, and of course was liable to this legatee, if such she is, for her residuary legacy. And if there were creditors, she was liable to them and might be answerable *de bonis propriis;* or the creditor might have a remedy on the bond, according to circumstances. The identical money in the hands of the executrix never was the money of the testator; and it was impossible that the executrix should be a debtor to the testator for goods, etc. which had belonged to him and which she received as executrix. The administrator *de bonis non* is not entitled to take any goods, etc. nor money, nor rights or credits which had not belonged to the testator in his lifetime. Suppose an executrix to sell on credit the goods of her testator; who can recover from the purchaser the debt? Certainly the administrator of the executrix, and not the administrator *de bonis non.* So the money which went into the hands of the executrix became liable to the payment or were assets for the payment of debts and legacies; and the executrix became answerable to that amount, but not to the administrator *de bonis non,* for he is not a creditor or legatee of the first testator, and there is no privity between him, the administrator *de bonis non,* and the executrix. At common law, if an executrix had recovered a judgment for a debt of her testator and died intestate, the administrator *de bonis non* could not have sued a *scire facias* upon such judgment. Now, by the Statute, 17, Car. II, c. 8, he may. But that Statute has no application to this question.

Besides, the executrix is bound by her bond to dispose of the residue of the goods etc., which shall be found remaining on the settlement of the account, according to law, and to the true intent and meaning of the last will and testament of the said deceased. This clearly means some person entitled to take by the will. The Act of Assembly, 2 Del.Laws 888, further declares that such bond may be sued for the use of any creditor, legatee, or person interested in the testator's estate. By the words, person interested in the testator's estate, I understand any creditor, legatee, or person claiming by or through any creditor or legatee, for to such only is the executor bound by the bond to pay. The administrator *de bonis non* is not included, but is excluded by the condition of the bond. He certainly cannot take according to the will of the testator.

As at present advised, I think that the administrator *de bonis non* cannot recover this residuary part of the estate, and that he is not liable to the legatee, and therefore that there was no error in rejecting the testimony offered on this point. At the same time I know that administrators of executors and of administrators often pay to administrators *de bonis non* money remaining

in the hands of their testators and intestates. Nay, I recollect a suit commenced by an administrator *de bonis non* against the executors of a deceased administrator, and a recovery; but there the case was not contested. No practice of the kind can establish the law or alter the law. And I apprehend that all such cases happen from inadvertence, convenience, mistake, or ignorance of the law, and not from any right which an administrator *de bonis non* has to receive or recover such money.

As to the sixth error, that two writs of *capias ad respondendum* had not been sued out and returned, etc., it is clear that this provision of the Act of Assembly does not apply to legatees. There is then no error in this.

PER CURIAM. Judgment reversed.

*Vandyke,* counsel for the plaintiff below, and defendant in error, then remarked that in the case of *Guthry, plaintiff in error, v. the State,* which was a suit on an administration bond in which the plaintiff did not set out in the declaration his title to sue, neither did he in his replication to the plea of performance allege any breaches, yet this court affirmed that judgment.

THE CHANCELLOR replied. That was a suit by a creditor, and in the assignment of errors and argument of the cause, our attention was called merely to the case of a creditor, and to the prerequisites of the Act of Assembly, that is to say, to the suing out the writs of *capias ad respondendum* and returns thereon. The plaintiff in error did not assign any error in not setting forth any breach of the condition of the bond. We were not required to consider the point now under discussion. But that opinion entirely corresponds with the opinion of the Court in this case. We then said, "To entitle the plaintiff below to prosecute a suit on this bond (administration bond), if he be a creditor of the deceased he must show that he has done everything required by the Act of him to give him this right. It is to be observed that the bond is made to the State; that no person has any interest in the bond but under certain circumstances, and that if such person wishes to recover any right secured by the bond, he must comply with the terms required by the Act and state the same in his declaration to entitle him to use or apply the bond to his benefit." And again, "It was incumbent on the plaintiff below to show in his declaration that he was fully entitled to prosecute a suit on the administration bond." It is true we affirmed the judgment, having in view entirely a suit of the administration bond by a creditor, but in so special a manner as to give full effect to the opinion there delivered, and equally decisive with the reversal

of this judgment. The fault was that we did not then go far enough in terms, and did not do directly what we have done here; that is, reverse the judgment absolutely. We went though as far as the assignment of errors and case made out would warrant us; and we are sure that the two opinions are perfectly consistent. . . .